## HEYDOCK *v.* DUNCAN.

M O in his will, after some specific legacies, made S (his wife) residuary legatee, and appointed said S, together with B and D, executors of his will. This will being duly proved and allowed, said S, B and D, upon filing a joint bond to pay debts and legacies, and to render an account when required by the judge of probate, received letters testamentary in common form, appointing them joint executors of the estate of said M O :—

*Held,* that the appointment of B and D as executors was void.

By our statute the judge of probate has no jurisdiction or authority to appoint an executor until he has given such a bond as the law requires.

In this case that had not been done because (1) if B and D were considered as principals, then there were no "sureties" on the bond as the statute requires, and (2) B and D not being residuary legatees, the condition of the bond is not such as the statute requires in all other cases. In fact they have given no bond such as the statute requires in all cases but that of a residuary legatee who is executor.

It was held, also, that the appointment of S as executrix was valid. She being the residuary legatee, the condition of the bond was according to the requirements of the statute in such a case, and B and D must be held to be her sureties upon the bond.

A widow who is residuary legatee and executrix, and files the bond required in such cases, and administers the estate without filing any inventory, is estopped to say that she did not accept the provisions of the will, whether she notified the judge of probate in writing of her acceptance or not.

A widow who is residuary legatee, upon filing the bond required by statute, is entitled to all the estate of her deceased husband not specifically bequeathed ; and upon her decease her administrator will be chargeable for what remains of it, the same as for any other property of which she may die the owner.

William H. Duncan, administrator of the estate of Sarah Olcott, late of Hanover, in Grafton county, deceased, intestate, having been duly cited to appear before the court of probate for said county, at the September term, 1858, to render an account of his administration, and notice having been given to the heirs-at-law and all others interested, the said Duncan appeared, and the proceedings thereon being continued from term to term to the January term, 1859, the said Duncan filed the following account or statement :

" I have received, as administrator of the estate of the late Mrs. Sarah Olcott, of Hanover, in our county of Grafton, no property to which she was entitled as residuary legatee by the will of her husband, the late Mills Olcott, of said Hanóver, and I have no information, knowledge or belief that the said Sarah Olcott, at the time of her decease, nor at any time since the decease of her said husband, has any other property or claim to any other property except as said residuary legatee.

And furthermore the estate of the said Sarah Olcott, if any such estate did exist, would be largely indebted to me in addition to other claims, for services rendered to a large amount to and for said Sarah Olcott.

WM. H. DUNCAN.

January term of the probate court, 1859."

Thereupon proceedings were continued from term to term till May term, 1859, when said Duncan filed the following amendments or statements :

" The account of William H. Duncan, administrator of the estate of Sarah Olcott, late of Hanover, deceased.

The said Duncan, administrator, charges himself with

The amount of the personal estate of said deceased, 00.00
Gain on the sale of the personal estate, by license, 00.00
Cash collected on notes,                               00.00
Cash collected on book account,                        00.00
Cash accruing from the sale of real estate by license, 00.00
Cash collected as rents of real estate,                00.00
Personal estate not appraised,                         00.00
Balance of interest account,                           00.00

[NOTE.] Said administrator has claims against said estate, and has paid out moneys and made expenditures in behalf of the same as administrator, but to what sums or amounts he is not now prepared nor able to state, nor does he deem it necessary, as he has received nothing and charges himself with nothing.

WM. H. DUNCAN."

At that term (May, 1859) said account or statement being considered and being supported by the oath of said administrator, &c., was duly allowed.

From this decree of the judge of probate allowing this account, these plaintiffs, Jane E. Heydock, of Poughkeepsie, New-York, widow, and Edward R. Olcott, of the city of New-York, heirs-at-law of the estate of said Sarah Olcott, appealed to this court, and assigned the reasons of their appeal as follows :

1. Because the judge of probate received the statement as an account, when in truth and law it was no account.

2. Because the judge received said pretended account and allowed it to be passed as an account, without requiring an inventory to be first returned with the usual oath by an administrator to his inventory.

3. Because the judge received said statement and pretended account in the place of an inventory, and as sufficient reason for not requiring the usual administrator's oath upon the inventory.

4. Because the judge received said statement or pretended account, as a sufficient form of inventory and account, in which the administrator states that he has " received no property to which his intestate was entitled as residuary legatee by the will of the late Mills Olcott," and that he " knows no other property than that to which she was entitled as such residuary legatee," without also requiring any oath from the administrator in conformity with section 1, of chapter 159, of the Revised Statutes, to the effect that no real estate, goods, chattels, notes, or other written evidences of debt, of the deceased, had come to the knowledge of the administrator, notwithstanding that this deficiency of the statement, to wit, that it did not negative such knowledge of property, was pointed out by the appellants.

5. Because the statement is, as afterward appeared at the hearing in the probate court, a statement not of facts nor of actual knowledge, but a statement of the theory of the law as applied to certain facts which are not stated, and is at the best wholly argumentative.

6. Because Duncan having been inquired of, as to whether he, as the administrator of Sarah Olcott, had not, since his appointment

as such administrator, given receipts for money or property to third parties, and having answered that he had, but undertaking in his answer to qualify this admission by statements to the effect that it was not property to which Sarah was entitled as residuary legatee of said Mills Olcott, but to which he, Duncan, was entitled as executor of Mills Olcott, the judge ruled that it was incompetent for the appellants for the purpose of charging the administrator in his account, to show his receipt of property or money as Mrs. Olcott's property which had come to her under the supposition that she was entitled to it as residuary legatee under the will of her late husband, Mills Olcott, unless she were in law strictly entitled to receive it as such legatee.

7. Because the judge, having in evidence before him the will of Mills Olcott, the husband of Sarah Olcott, and who died before her, and the bond filed in the probate court in said case, held that under the will and proceedings, Sarah Olcott did not acquire any property which, though remaining in her possession or seizin at the time of her death, the administrator was obliged to put into his inventory or account.

8. Because the judge in deciding whether the administrator should be charged in the first instance with property of which at the time of Mrs. Olcott's death, she was seized and possessed, and which was actually known to him, and which in fact had come to his actual possession, undertook to pass upon questions of the title to such property under the will and proceedings on the estate of Mills Olcott, without regard to such actual possession or seizin.

9. Because the judge wrongfully allowed the paper filed by the administrator as an account.

SARGENT, J.  The facts in this case are, that Mills Olcott, late of Hanover, in this county, on the 8th day of June, 1838, made his will, in which, after making certain specific legacies, he made his wife Sarah Olcott his residuary legatee, giving to her and her heirs and assigns for ever, all the rest, residue and remainder of his estate, whether real, personal, or mixed, and wheresoever situated. He then appointed his said wife Sarah and two sons-in-law, Joseph Bell and William H. Duncan, his executors.

Mills Olcott died July 12, 1845, and at a court of probate, held on the 25th day of the same July, said will was duly proved, approved, and allowed.  Upon the same day the said Sarah Olcott, Bell, and Duncan, signified in writing their willingness to accept the trust of executors of said estate, and upon their petition in writing to the judge of probate they received letters testamentary in common form, appointing them executors of said will.

In the bond which they gave, the said Sarah Olcott, Joseph Bell and William H. Duncan stood bound and obliged to the judge of probate, &c., in the sum of, &c., to the true payment whereof they bound themselves, their heirs, &c., jointly and severally by those presents.  The condition of the bond was that the said Sarah Olcott, Bell, and Duncan, " shall well and truly pay all debts due from the testator at the time of his decease, and all the charges of

his funeral, and all the legacies and bequests given in and by said last will and testament, and shall in all things faithfully execute the said office and trust of executor of said last will and testament, agreeably to the tenor, force and effect of the same, and the rules and directions of the law, and render a plain and true account of their proceedings therein to the said judge of probate when lawfully thereto required;" and it was signed by the three obligors. There has never been any account rendered, or any settlement of the administration or executorship of said Mills Olcott's estate. There is no evidence that the widow of said Olcott ever informed the judge of probate in writing that she accepted the provisions of the will, unless it may be implied from the other evidence.

Sarah Olcott died March 18, 1848, intestate, and William H. Duncan was duly appointed administrator of her estate, giving bond according to law, but no inventory of her estate has ever been returned by him to the court of probate. At the September term of said court, 1858, he was cited to appear and settle his administration account, upon which the proceedings were had, and an appeal taken to this court for the reasons as stated in the case.

The material question which arises here is as to the right of said Sarah Olcott as residuary legatee, to the property of Mills Olcott, under and by virtue of the provisions of his will, and it was agreed by the parties that if the court should be of the opinion that she was not entitled to such property in that way, then the decree of the judge of probate should be affirmed; otherwise, that the case should be sent to an auditor.

The plaintiffs claim that the said Sarah, at the time of her decease, was in possession of property formerly of the said Mills Olcott, which she received and claimed as residuary legatee, and to which she was legally entitled, and for which the said Duncan is properly chargeable as her administrator.

But the defendant claims that as matter of law the said Sarah was never entitled to any of said property as such residuary legatee, and that she never had or acquired any such right or title to it as would make her administrator chargeable for the same.

Such property could only be held by her through an administration upon the estate of Mills Olcott, in the legal execution of his will. Now such administration must have been in one of two ways, either in the mode prescribed in chapter 158, section 12, Revised Statutes; Compiled Laws, 405; or in that prescribed in section 13 of the same chapter.

By the former method the executors named in the will must have taken upon themselves the trust, by giving bond according to the provisions of said 12th section; (1) To return an inventory on oath within three months; (2) To administer the estate according to law; (3) To render an account of administration in one year; (4) To pay and deliver over the balance of the estate to those legally entitled to the same; (5) To deliver the letters of administration into court if any will of the deceased should afterward be approved and allowed; and they must have proceeded according to the conditions of their bond, and settled the estate and paid over to ·

Mrs. Olcott the residue, if any thing remained, on such settlement of their administration account.

But Mrs. Olcott was not entitled to any of the property of her late husband in that way, and for three reasons. 1. No administration of his estate had ever been completed, or any administration account settled, nor does it appear that any thing, and if any thing, how much, would be left on such settlement for the residuary legatee. 2. If the bond given in this case was designed to be a bond for all three of the signers as principals, and with a view to make them all joint executors, then the bond is void for want of sureties, the statute requiring sufficient sureties (more than one). 3. Because if such was the design of the bond given in this case, namely, to make all three of the signers executors, then it was also fatally defective in not being conditioned according to the requirements of section 12, the bond containing no one of the five conditions imperatively required by that section.

But this section 12 provides expressly that no person shall intermeddle with the estate of any person deceased, or act as the executor or administrator thereof, or be considered as having that trust, until he shall have given a bond, &c., with sureties, &c., upon all the conditions above specified, and until a bond with these conditions is given, the judge of probate has no jurisdiction to appoint an executor or administrator under this section; and any decree of appointment, or letters testamentary, until such bond is given, is merely void. So that neither of the three persons named in the will of said Mills Olcott as executors, can be considered as having that trust, or as having any authority whatever to act by virtue of any proceedings in the court of probate. So that said Sarah Olcott could not have held or been entitled to any of the property of Mills Olcott, either as residuary legatee or as executrix under this section of the statute. *Kittredge* v. *Folsom*, 8 N. H. 111; *Tappan* v. *Tappan*, 24 N. H. 400; 30 N. H. 50.

Let us now see how she would stand upon the 13th section of the same chapter, which is, "If the executor to whom administration shall be granted shall also be residuary legatee, and if there be no widow, or, if there being a widow, she inform the judge in writing that she accepts the provisions of the will, a bond, with sufficient sureties, may be taken from him with condition only to pay the funeral charges, debts, and legacies, and to render upon oath an account of his proceedings therein, when thereto lawfully required." Now it is evident that, under this section, although the bond is in proper form, yet the three persons designated in the will, and who signed the bond, can not all be executors, because they are not all residuary legatees, and it is only such that are authorized to administer by giving such a bond as this.

And the question arises, whether we can properly consider this as a bond given by Mrs. Olcott, with Bell and Duncan as her sureties, upon which she, being the residuary legatee, could be properly appointed executrix of said Mills Olcott's estate, or whether we must hold that all that has been done must go for naught, and new proceedings must be instituted in order to obtain a settlement of

the estate of Mills Olcott, before any progress can be made in settling that of Mrs. Olcott, his widow.

We think the former is the correct view. Bell and Duncan can not complain that they should be held as sureties instead of principals, as it can in no way increase their liability. And, although where parties sign a note without any designation as to whether they are principals or sureties, the legal presumption is that they are principals; yet that presumption may be rebutted, and it may be shown, even as against the payee, that some were in fact sureties, the payee having knowledge of it. *Bank* v. *Kent*, 4 N. H. 224. And, though the same rule applies in case of bonds as is applied to notes in that particular; *Davis* v. *Barrington*, 30 N. H. 517; and it has never been questioned that the real relation and position of the signers of a note or bond, as between each other, may be inquired into for the purpose of showing whether some are sureties or not, and it is intimated, in *Bank* v. *Baldwin*, 41 N. H. 434, that the signers of a note who had each promised the bank as principal, though they could not, as against the bank, show that they were not such, yet, as between themselves, they might show the fact that some were sureties for the rest.

We can see no difficulty in applying this principle here, especially when, in those cases, the facts were allowed to be proved by the sureties themselves, in order to acquire an advantage by it, when in this case it is proved by the other side, and that not to increase the liability of the sureties, but merely in order to give such a construction to the bond as will give it some legal effect, when, without such construction, the bond and the orders and decrees of the court based upon it, must be a mere nullity. If it were material for Bell and Duncan to show that they were mere sureties on this bond, we can not doubt that they would be able to satisfy a jury, by showing all the circumstances that are now shown in this case, that such was the fact.

From the fact that these signers were attorneys-at-law and members of the bar in this county, and thus officers of this court, a fact of which we should take judicial notice, and the presumption that would arise that they knew the plain provisions of the statutes to which we have referred, and must have known that, with the bond they gave in this case, they could not properly be appointed executors themselves under either section of the statute, for the reasons we have already stated, and that it was only by their being considered as sureties for Mrs. Olcott, who was the residuary legatee in the will, that she could be legally appointed to that trust, and that, if they were to claim to be principals, the bond and all the proceedings under it or upon it must be void—when we consider the connection of these two signers of the bond with the estate, as heirs, and their relationship to the residuary legatee, and when we know, from the character and position of both these men, that they could not have intended that all the proceedings in this case, to which they have been parties, should be a mere farce, but must have been intended by all parties to accomplish some useful and desirable object—from all these considerations, and many more which might

be named, if they were trying to establish the fact that they were sureties on this bond, we think they might submit the question to a jury with great confidence.

But the question here not being one for the decision of a jury, but of judicial construction, and when we find that this bond must receive the construction we give it, in order to give effect to any of the proceedings in the probate court in this case, we have no hesitancy in coming to the conclusion, especially upon the authority of *Judge of Probate* v. *Ordway*, 23 N. H. 205, where it is said that the ordinary rules of construction will give way in the construction of a bond to the judge of probate when the nature of the bond is prescribed by statute, that we are bound to give to the language used in this case, such a construction as will give effect to the intention of the law, and of the court and of the parties concerned, if it can be done consistently with the language used, however unskillfully the instrument may be drawn. By this rule of interpretation, we are at no loss as to the construction the bond in this case is to receive. Bell and Duncan are to be considered as sureties, and then the bond and the decrees of the court are all valid as far as Mrs. Olcott is concerned; and the fact that the decree may be void as to the appointment of Bell and Duncan as executors, does not make it so in regard to Mrs. Olcott; in which case the court has acquired the proper jurisdiction.

In this view of the case, the bond itself operates as an administration upon the estate. Some authorities hold that these proceedings vest absolutely in the legatee all the property not otherwise specifically bequeathed, leaving the bond as the only security for the debts and legacies. *Tarbell* v. *Whitney*, 5 N. H. 63; *Batchelder* v. *Russell*, 10 N. H. 37; *Clark* v. *Tufts*, 5 Pick. 337; *Tappan* v. *Tappan*, 30 N. H. 68. Whether it should be held that this vesting of the property in the legatee is absolute or only *primâ facie*, may be doubted.

But it is objected that Mrs. Olcott did not inform the judge of probate in writing that she accepted the provisions of the will. Now it will be observed, from the wording of the statute (sec. 13) before recited, that this provision in regard to the widow's informing the judge of probate of her acceptance of the provisions of the will, has particular reference to cases where the executor and residuary legatee are a different person from the widow. It first provides that the executor who is the residuary legatee may proceed in the manner prescribed where there is no widow, and afterward provides for the case where there is a widow, who might, by declining to accept the provisions of the will, at her option, render it absolutely necessary to have the estate administered in the way prescribed in section 12. But the case before us is one not specifically mentioned in that section or in any other, and for the reason, no doubt, that there was no occasion whatever to provide for such a case, where the widow is, at the same time, the executor and also the residuary legatee.

In such case, the widow must refuse to accept the provisions of the will, which would at once prevent her from proceeding as resid-

uary legatee, under section 13, and would render it necessary that she or some body else should administer the same, according to the provisions of section 12; or, if she does not decline to accept the provisions of the will, but petitions to have the will proved and allowed, and then petitions to be appointed executrix, and files a bond, such as is prescribed in case of residuary legatees, and proceeds under it, never making any return of an inventory or settling any account, she would be estopped from denying that she accepted the provisions of the will; and if she could not herself be heard to make the objection, certainly no one else will be heard to make it for her.

We think, therefore, that the bond given by Mrs. Olcott, Bell, and Duncan, in this case, must be understood and construed as given by her as principal, and the other two as her sureties; and that she, upon the giving of such bond, was legally appointed executrix, and, being the residuary legatee, these proceedings vested in her all the estate of Mills' Olcott, except such as was specifically bequeathed or devised; that the legatees to whom certain sums of money were bequeathed, may have their remedy upon the bond, if they have not received their several legacies; that neither said Bell or said Duncan had any authority to intermeddle with said estate of said Mills Olcott, and that, whatever of said estate, if any, came into their hands, in any way, they must have held for her, and are answerable to her estate for the same; and that her administrator is answerable to her heirs, not only for all the property which she had in possession at the time of her death, which came from said estate, but also for all of such property to which she was legally entitled, wherever situated, which the law made it his duty to obtain and administer upon.

The case must, therefore, be heard before the auditor.